Christopher E. Roberts (SBN 363586)
Email: CRoberts@butschroberts.com
BUTSCH ROBERTS & ASSOCIATES LLC
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| KELLY BLAND, on behalf of herself and all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MEDVI, LLC d/b/a MEDVi,<br><br>Serve registered agent at:<br>United States Corporation Agents, Inc.<br>131 Continental Dr #305<br>Newark, DE 19713<br><br>　　　　Defendant. | **Case No.:** 2:26-cv-4323<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1.	This action arises out of the marketing practices of Defendant MEDVi, LLC d/b/a MEDVi ("Defendant") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and provisions of the Texas Business & Commerce Code ("TBCC").

2.	Defendant sends telemarketing text messages advertising Defendant's products and services.

3.	Defendant sends these text messages to individuals on the National Do-

1

Not-Call Registry ("DNC List").

4. Plaintiff Kelly Bland ("Ms. Bland" or "Plaintiff") received unsolicited text messages from Defendant soliciting its medical products and services.

5. The text messages included a link that when clicked would direct Plaintiff's browser to Defendant's website, www.medvi.org.

6. The TCPA prohibits sending unsolicited telemarketing text messages to telephone numbers registered on the DNC List.

7. The TBCC prohibits companies, like Defendant, from telemarketing into Texas without a registration certificate.

8. Accordingly, Ms. Bland brings this action on behalf of herself and classes of similarly situated individuals.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

10. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a), because such claims are so closely related to the federal claims that they form a single case or controversy.

11. This Court has jurisdiction over Defendant because Defendant conducts business transactions in this District and is headquartered in this District, because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, and for the reasons otherwise stated in this Complaint.

12. Venue is proper in this District because Defendant is headquartered in this District and some of the wrongful conduct giving rise to this case occurred in and/or was directed from and/or to this District.

## PARTIES

13. Plaintiff is, and at all times mentioned herein was, a citizen and resident

2

of Texas.

14.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

15.     Defendant is, and at all times mentioned herein was, a Delaware limited liability company headquartered in Los Angeles, California.

16.     Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17.     On February 20, 2026, the Defendant received a warning letter from the Food and Drug Administration advising that it was making false or misleading statements regarding semaglutide products on its website.

## TCPA BACKGROUND

18.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

19.     The TCPA establishes a national "do not call" database of numbers not to be called.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

20.     These regulations are codified at 47 C.F.R. §§ 64.1200(c)(1-2).

21.     Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

3

22.    A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of up to $500 to up to $1,500 per call through § 227(c) of the TCPA.

### **Vicarious Liability**

23.    A person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

24.    An entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

25.    Finally, text messages, such as the ones sent by Defendant, are subject to the TCPA and its implementing regulations. *See* Fed. Commc'ns Comm., Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection: Text Message Senders Must Comply With the Telephone Consumer Protection Act* (Nov. 18, 2016). *See also Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call'".); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017);

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (9th Cir. 2009).

## RELEVANT TEXAS BUSINESS COMMERCE CODE BACKGROUND

26.     Texas Business Commerce Code § 302.101 provides that "[a] seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." TBCC § 302.101(a).[1]

27.     A violation of TBCC § 302.101(a) carries statutory damages of up to $5,000 per violation.  TBCC § 302.302.

## FACTUAL ALLEGATIONS

28.     Plaintiff is the owner of a cell phone bearing cellular telephone number 817-XX 2161.

29.     Plaintiff registered her number on the DNC List on February 9, 2009, for the purpose of being left alone by telemarketers.

30.     On August 18, 2025, at approximately 5:46 p.m., Plaintiff received an unsolicited text message from Defendant.

31.     The text message was sent from telephone number (833) 861-3413.

32.     The text message stated: "Hi kelly – Your provider confirmed your eligibility for Semaglutides online.  Click here to finish your order smsu.io/ymOgH Reply STOP to opt-out."

33.     At the time the text message was sent, when the link "smsu.io/ymOgH" was clicked, the link would direct the device's browser to Defendant's website, www.medvi.org.

34.     Defendant's website advertises and offers for sale, *inter alia*, weight

---

[1] The Telephone Solicitors that have registered with the Texas Secretary of State can be found at the following website: https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp (last accessed March 1, 2026).

5

loss products and prescriptions.

35. Upon information and belief, the link is and was associated with third-party communications platform ClickSend.

36. ClickSend is a communication platform that allows for and facilitates the sending of advertising text messages *en masse*.

37. Upon information and belief, Defendant and/or its agent operated a ClickSend account to send unsolicited text messages *en masse* for the purpose of driving potential consumers to Defendant's website so that Defendant could solicit these consumers to purchase popular weight loss medications and products.

38. On August 24, 2025, at approximately 6:09 p.m., Plaintiff received another unsolicited text message from Defendant.

39. The text message was sent from telephone number (833) 861-3413.

40. The text message stated: "Quick reminder kelly – Your provider has approved your Semaglutide script.  You're all set to complete your order. smsu.io/0MpnQ Reply STOP to opt-out."

41. On September 10, 2025, at approximately 2:28 p.m., Plaintiff received another unsolicited text message from Defendant.

42. The text message was sent from telephone number (833) 861-3413.

43. The text message stated: "Quick reminder kelly – Your prescription is ready following your consult.  Confirm your Semaglutide order to begin smsu.io/0bEZm Reply STOP to opt-out."

44. Upon information and belief, Defendant used deceptive unsolicited text message marketing to quickly grow and expand its start-up company, which was founded in 2024.

45. Upon information and belief, Defendant sent messages that falsely suggested an association with the text recipient's medical provider or a consultation so that if the text recipient was in the market for, or was exploring, a weight loss

drug, the text recipient may be diverted to Defendant for the sale of such a product.

46.    Through illegal text message marketing, and other "spamming" advertising methods, Defendant was able to quickly scale its business and consumer base, generating $401 million in sales in its first year in business with just two employees and artificial intelligence tools.[2]

47.    Defendant reports that it is on pace to do $1.8 billion in sales in 2026.[3]

48.    Upon information and belief, Defendant's exponential increase in sales is attributed to its unsolicited advertising campaigns that violate the TCPA.

49.    Plaintiff did not provide her consent to receive these text messages.

50.    Defendant's records or the records of its third party vendors will reveal all of the text messages Defendant sent to Plaintiff and the Classes.

51.    Other consumers have reported receiving similar text messages from Defendant. For example, on the popular discussion website Reddit[4], one user made the following post that reported receiving an identical text message identical to the one Plaintiff received:

---

[2] https://www.nytimes.com/2026/04/02/technology/ai-billion-dollar-company-medvi.html (last accessed April 20, 2026).
[3] *Id.*
[4] https://www.reddit.com/r/phishing/comments/1k7xhat/what_is_this_scam/ (last accessed Apr. 20, 2026).

52. Defendant's violations were negligent.

53. Alternatively, Defendant's violations were willful and knowing. For example, Defendant knew it was violating the TCPA, by sending unsolicited text messages, but continued doing so because it was a profitable way to solicit new customers.

54. Plaintiff and the putative class members were damaged by the violations alleged herein, and their privacy was improperly invaded. Defendant's calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the unwanted text messages. The text messages were annoying and a nuisance and wasted the time of Ms. Bland and the Class members. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## DEFENDANT'S LIABILITY

55. Defendant uses automated systems to send text messages, to hundreds, if not thousands, of consumers across the U.S. as part of its marketing strategy.

56. Defendant sent two or more telephone solicitations to Ms. Bland, whose

8

number was on the National Do-Not-Call Registry at the time of the text messages. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

57.    Accordingly, for violations of 47 C.F.R. § 64.1200(c), Ms. Bland is entitled to $500 per call through 47 U.S.C. § 227(c).

58.    Ms. Bland is entitled to an additional $1,500 per call if Defendant's actions are found to be knowing or willful.

59.    Pursuant to § 302.101 of the TBCC, a seller is prohibited from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

60.    A search of the telephone solicitors who have registered with the Texas Office of the Secretary of State confirms Defendant failed to register before sending text messages into Texas.

61.    Defendant violated § 302.101 of the TBCC when it engaged in telephone solicitation without obtaining a registration certificate from the Office of the Secretary of State.

62.    Accordingly, for violations of § 302.101 of the TBCC, Plaintiff is entitled to an award of no more than $5,000 for each violation pursuant to § 302.302(a) of the Texas Business & Commerce Code.

63.    In addition, pursuant to § 302.302(d) of the Texas Business & Commerce Code, Plaintiff is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

## CLASS ACTION ALLEGATIONS

64.    Ms. Bland brings this action under Fed. R. Civ. P. 23 on behalf of the following classes, defined as follows:

9

**TCPA Class**: Plaintiff and all persons within the United States to whose telephone number: (1) Defendant placed (or had placed on its behalf) two or more telemarketing calls and/or text messages in a 12-month period, (2) when the telephone number to which the telephone calls or texts were made was on the National Do-Not-Call Registry for 31 days or more at the time of the calls/texts, (3) and said text messages from four years prior to the filing of this Complaint through the date of class certification.

**Texas Class**: From two years prior to the filing of this Complaint, until the date of class certification: Plaintiff and all residents of the State of Texas to whose telephone number Defendant placed (or had placed on its behalf) a telephone solicitation when Defendant did not hold a registration certificate as required by Tex. Bus. & Com. Code § 302.101.

(The TCPA Class and Texas Class, are referred to as the "Classes").

65.     Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families.

66.     The members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

67.     The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and/or third parties maintain written and electronically stored data showing:

   a.   The time period(s) during which Defendant sent its text messages;

   b.   The telephone numbers to which Defendant sent its text messages;

10

    c.  The telephone numbers for which Defendant had prior express written consent;

    d.  The purposes of such text messages; and

    e.  The names and addresses of Class members.

68.  Upon information and belief, the Classes are comprised of hundreds, if not thousands, of individuals.

69.  There are common questions of law and fact affecting the rights of the members of the Classes, including, *inter alia*, the following:

    a.  Whether Defendant (or someone acting on its behalf) sends telemarketing text messages;

    b.  Whether Defendant (or someone acting on its behalf) obtains prior express written consent, or any form of consent before sending text messages;

    c.  Whether Defendant or the entities with which they contract make solicitation calls/text messages and to telephone numbers registered on the DNC List;

    d.  Whether Defendant had the requisite registration certificate as required by TBCC § 302.101 when making telephone solicitations into Texas

    e.  Whether Defendant's statutory violations were willful and knowing; and

    f.  Whether Defendant should be enjoined from engaging in such conduct in the future.

70.     Plaintiff is a member of the Classes in that Defendant sent two or more texts for telemarketing purposes, in a one-year period to her telephone number, while her number was registered on the DNC List.

71.     Plaintiff's claims are typical of the claims of the members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

72.     Plaintiff and Class members have also necessarily suffered concrete harm in addition to statutory damages, as all Class members spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

73.     Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

74.     Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent her and the Classes.

75.     Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

76.     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications.

77.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each Class member make individual actions uneconomical.

78.     Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. §227(c)
### (On behalf of Plaintiff and the TCPA Class)

79. Plaintiff incorporates the foregoing allegations as if fully set forth in this Count.

80. Defendant made, or had made on its behalf, telephone solicitations to Plaintiff and putative TCPA Class Members' telephone numbers.

81. Plaintiff's and putative TCPA Class Members' telephone numbers were all registered on the DNC List at the time Defendant sent the calls/texts at issue.

82. Plaintiff and putative TCPA Class Members each received two or more such calls in a 12-month period.

83. Plaintiff and putative TCPA Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5) and the TCPA's corresponding regulations.

84. Plaintiff and putative TCPA Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff Kelly Bland individually, and on behalf of all others similarly situated, requests that the Court:

a. Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the proposed Class, appointing Plaintiff as the TCPA Class representative, and appointing her counsel as class counsel;

b. Enter judgment in favor of Plaintiff and the TCPA Class members and against Defendant for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of up to $500 per

violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

c.      Enter a judgment in favor of Plaintiff and the TCPA Class that enjoins Defendant from violating the TCPA's provisions and regulations;

d.      Enter judgment in favor of Plaintiff and the TCPA Class for all applicable pre-judgment and post-judgment interest amounts;

e.      Enter judgment in favor of Plaintiff and the TCPA Class for all costs, including the cost of class notice; and

f.      Award Plaintiff and the TCPA Class members such further and other relief the Court deems just and appropriate.

**SECOND CAUSE OF ACTION**
**Violations of TBCC § 302.101 *et seq.***
**(On Behalf of Plaintiff and the Texas Class)**

85.      Plaintiff incorporates the foregoing allegations as if fully set forth in this Count.

86.      Plaintiff received the calls at issue from Defendant on her cell phone in Texas.

87.      Section 302.101 of the Texas Business & Commerce Code ("TBCC") prohibits sellers, like Defendant, from engaging in telephone solicitation from a location in Texas or to a purchaser located in Texas unless the seller obtains a registration certificate from the Office of the Secretary of State for the State of Texas.

88.      Defendant is a "seller" as defined by Section 302.001(5) of the TBCC because it made telephone solicitations to Plaintiff.

89.      Plaintiff and the Texas Class members are "purchasers" as defined by Section 302.001(3) of the TBCC because they were solicited by Defendant to purchase Defendant's products.

14

90.    The calls placed by Defendant to Plaintiff and the Texas Class members were "telephone solicitations" as defined by Section 302.001(7) of the TBCC because the phone calls were intended to induce Plaintiff and the Texas Class members to purchase Defendant's products.

91.    Defendant violated Section 302.101 of the TBCC when it or its representatives engaged in its placing of telephone solicitation calls to Plaintiff and the Texas Class without obtaining the necessary registration certificate from the Office of the Secretary of State for the State of Texas.

92.    Section 302.302(a) of the TBCC provides that a person who violates the requirements of Section 302 is subject to a penalty of up to $5,000.00 for each violation. Plaintiff seeks these damages individually, and on behalf of the Texas Class members.

93.    Section 302.302(a) provides that the party bringing the action is also entitled to recover all reasonable costs incurred in prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorneys' fees. Plaintiff seeks these damages individually, and on behalf of the Texas Class members.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Kelly Bland, individually, and on behalf of all others similarly situated, requests that the Court:

a.    Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the proposed Class, appointing Plaintiff as the Texas Class representative, and appointing her counsel as class counsel;

b.    Enter judgment in favor of Plaintiff and the Texas Class members and against Defendant for all damages and other relief available under the TBCC, including injunctive relief, statutory damages of $5,000 per violation and all

15

reasonable costs incurred in prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorneys' fees;

c.     Enter a judgment in favor of Plaintiff and the Texas Class that enjoins Defendant from violating the TCPA's provisions and regulations;

d.     Enter judgment in favor of Plaintiff and the Texas Class for all applicable pre-judgment and post-judgment interest amounts;

e.     Enter judgment in favor of Plaintiff and the Texas Class for all costs, including the cost of class notice; and

f.     Award Plaintiff and the Texas Class members such further and other relief the Court deems just and appropriate.

## JURY DEMAND

Please take notice that Plaintiff Kelly Bland demands a jury trial.

Respectfully submitted,

By: /s/ *Christopher E. Roberts*
Christopher E. Roberts (SBN 363586)
Email: CRoberts@butschroberts.com
BUTSCH ROBERTS & ASSOCIATES LLC
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700

*Counsel for Plaintiff*

16